BENJAMIN M. PRICE et al.

*v.*

NINA PATTERSON et al.

[Decided · August 8th, 1911.]

1. The testator's residuary estate was given by his will to his trustees in trust to pay the income thereof to his four children as therein provided, and the disposition of the principal of each of the shares was controlled by the following language used in respect of one of them : "And upon the death of my said son Edward, the one-fourth part of my then residuary estate is to be divided between and paid to the persons, including my trustees, who, under the terms of this will shall then be entitled to receive, have or hold the principal of the other shares of my residuary estate, in the same proportions as they may then be respectively entitled to in such other shares and upon the same trusts and conditions respectively as to such shares as may still be held in trust under the terms of this will."—*Held*, that on the contingency named, the share of Edward P. (in this instance), or of others in each specific instance, was to be divided between and paid to whoever was then in a position to receive the principal under the terms of the will, and if no one was then in a position so to receive the principal, then it was to go to the trustees to be held for the persons who were then receiving the income of the respective four shares as then constituted, and to be held by the trustees upon the same trusts and conditions as the rest of the estate was then held for those then entitled to receive the same.

2. The assignees under an assignment executed by a grandson of the testator dated January 18th, 1908, comprising the grandson's contingent interest, and not the grandson's general assignee in insolvency under an assignment afterwards made, are entitled to such interest.

Final hearing on bill, answer and proofs.

*Messrs. Hartshorne, Insley & Leake,* for the complainants.

*Messrs. Tennant & Haight,* for the defendants.

GARRISON, V. C. (orally).

Benjamin Price, the testator, died on the 10th of September, 1892, having made a will, which was dated on the 11th of Sep-

tember, 1891. At the time of making his will he had four children, as follows:

First. A son Benjamin P. Price, who had then a living daughter Nina P., married to a man named Patterson.

Second. A son David S. Price (who had a son Benjamin M., who, in turn, had a son David Shotwell Price); a daughter, Emma B. Price, at that time intermarried with a man named Munn (and they had no children); a daughter named Florence P., intermarried with a man named Jaeger (who at that time had a child, Gustave Jaeger).

Third. A son Edward P. Price, who was unmarried and insane, and incarcerated at that time in an insane asylum.

Fourth. A daughter, Sarah S., intermarried with a man named Brett (and they had no children).

His will, which is a very long one, provides, so far as the matter with which we are now concerned, for the disposition of his residuary estate as follows: That there shall be three trustees, who are to have and hold, as joint tenants, all of the said residuary estate. They are to pay the income thereof to his four children—Benjamin P., David S., Edward P. and Sarah S.—excepting as to Edward P., the insane son, they were only to pay so much as might be necessary for his proper maintenance, &c. With respect to the income allotted to Benjamin P. and David S., it is provided that if they have children, the children are to enjoy the income for twenty years after the date of the death of their father, and such of the children as are then surviving are to get the principal of the share. This is not so with respect to Edward P., nor is it so with respect to Sarah S. As to her share (that is, Sarah S. Price's), it is provided that she is to have the income during her life; that if she shall die before her husband he is to have the income during his life; that she may appoint who shall have the principal by a will, to operate either at her death, if her husband has predeceased her, or after his death, if he survives her; and, in default of a will, that then the principal shall ultimately go to her children, if she have any. And then with respect to her, and with respect to each of the three other shares, it is provided,

29

by similar language, what shall happen if she and Benjamin P. and David S. shall, at the period provided for in the will, have no issue. As to Edward P., the same provision is contained, although there is no provision which would take care of any issue if he were to have any.

It is with the construction of this clause, which appears with respect to each one of the children upon certain contingencies, that we are now concerned.

Edward P. died on the 10th of June, 1910. The paragraph in question which, in the will, has specific reference to his share (and, as before stated, is in identical language as that with respect to each of the other three shares), reads as follows:

"And upon the death of my said son Edward, the one-fourth part of my then residuary estate is to be divided between and paid to, the persons, including my trustees, who, under the terms of this will shall then be entitled to receive, have or hold the principal of the other shares of my residuary estate, in the same proportions as they may then be respectively entitled to in such other shares and upon the same trusts and conditions respectively as to such shares as may then still be held in trust under the terms of this will."

Both Benjamin P. and David S. had predeceased Edward, Benjamin P. dying on the 27th of March, 1902, leaving his daughter, Nina P. Patterson, surviving him; and David S. having died on the 16th of December, 1903, leaving his son Benjamin M. and his (Benjamin M.'s) son David Shotwell Price; his daughter Emma P. Munn, and his daughter Florence P. Jaeger (and her son, Gustave Jaeger), surviving him.

Mrs. Brett is still alive.

Therefore, at the time of Edward P.'s death the situation of the estate, so far as this matter is concerned, was this: The trustees were holding in their hands the entire residuary estate, and were paying the income of one-fourth thereof to Mrs. Patterson. They were paying the income of one-fourth thereof, in three parts respectively, to Benjamin M. Price, Emma P. Munn and Florence P. Jaeger, the three children of David S. Price, deceased; and they were paying the whole of the income of one-fourth to Mrs. Brett.

My opinion, from reading the entire will, or so much thereof as bears upon this question, and of the situation existing at the time of the testator's death as disclosed by the will and the facts which I have above recited is, that by this language above quoted, and which occurs, as I have said in certain contingencies in the disposition of each one of the four parts into which the residuary estate was originally divided, upon the death on the contingency named, the share of Edward P. (in this instance), or of others in each specific instance, was to be divided between and paid to whoever was then in a position to receive the principal under the terms of the will, and if no one was then in a position to receive the principal to have it as their own, then it was to go to the trustees to be held for the persons who were then receiving the income of the respective four shares as then constituted, and to be held by the trustees upon the same trusts and conditions as the rest of the estate was then held for those then entitled to receive the same.

It was, of course, a contingency which this testator must have had in mind, that at the time of the death of Edward P., for instance, it might well be that Mrs. Brett would have died and left a child. Under the terms of this will, this child would therefore, upon the death of Edward P., be entitled to principal, because she was entitled to the principal of the share set aside for her mother. The children of David S. and of Benjamin P. would not be entitled to principal unless their fathers had been dead twenty years, and, therefore, there would have been two classes between whom this money could be divided; one class, those whose money was still held in trust for them and must be so held for a period of years; the other, those who were entitled to immediate distribution of principal.

There are numerous other contingencies of a like character, all of which would be met and satisfied by this construction.

There is no dissent from this construction which the court has placed upon this language, excepting on behalf of Mrs. Patterson, Mrs. Munn, Mrs. Jaeger and the assignee in insolvency of Benjamin M. Price, who is the son of David S. Price. It is his contention (that is, this assignee's contention) that the meaning of the

clause quoted is, and that it must be construed to be, that upon the death of Edward there should be immediately distributed as principal the one-fourth part of the residuary estate, the income of which had been payable to or on account of Edward's maintenance and support, to the grandchildren of Benjamin M. Price, then living.

His idea is, and his argument is, that while it is true that, under the clauses of the will respecting Benjamin P. and David. S. the fourth part of the residuary estate upon which they and their children were to receive income was not to be distributed as principal for a period of twenty years after the death of them respectively, still, with respect to the death (or the contingency mentioned) of Edward P. or Mrs. Brett, before this period had been reached of distribution of principal of their shares, the share of their fathers (that is, Benjamin P. and David S.), the share of such one, David P. or Mrs. Brett, could be immediately distributed as principal to these contingent beneficiaries.

I do not think either the language, the scheme which the will discloses, or any theory of construction that I could give sanction to, could possibly result in this reading of the will. It does violence to the language, and requires the absolute excision, in my view, of many of the words which appear in this clause. It is necessary to absolutely strike out, in the beginning, the words "including my trustees," because if the money is to be paid directly to these grandchildren, and was not to be paid to any trustees, it was to be paid to individuals for their individual use and profit; and it requires the absolute elimination, in my view, of all that part of the clause beginning "Upon the same trusts and conditions," &c.

These words, which are required to be excised to reach the construction contended for by the assignee in insolvency, illuminate, in my view, and make perfectly clear what the testator did mean when you leave them in the clause and read it in its entirety. He did mean, as I have said before, in my view, to have the share of Edward P., when he died, go to the same people, upon the same trusts, and to be held in the same manner as the other shares

were then going to, being held for and being then paid to or divided among. This is the construction which I shall adopt.

The next issue which is now before me and requires determination is, as between the assignees of Benjamin M. Price, the son of David S. Price, who are mentioned in and covered by an assignment dated the 18th of January, 1908. That assignment, signed by Benjamin M. Price, recites:

"That I, Benjamin M. Price, in consideration of the sum of forty-five hundred dollars, to me paid by Emma R. Price and Nina P. Patterson, have assigned to the said Emma R. Price and Nina P. Patterson and their assignees, and do hereby assign to the said * * * all my interest in and to the legacy due me under the terms of item 7th of the will of Benjamin M. Price, together with all profits and accumulations due and to become due therefrom, and all my rights and interests therein, and thereby, vested in and conveyed to me * * *."

And he then makes them his attorneys to collect and receive in his name, &c. The other person who contests with the assignees just mentioned, the rights in question, is Mr. Clarence Mabie, who was made the general assignee in insolvency of Benjamin M. Price by an instrument of said Benjamin M. Price under date of the 12th of December, 1910.

I am going to hold that this assignment to Emma R. Price and Nina P. Patterson was intended, as by fair construction of its language it does, to convey to them whatever interest Benjamin M. Price had—contingent, or whatever the nature of it was—under the seventh item of the will of his grandfather.